**AFFIRM; and Opinion Filed April 2, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01039-CV

**ANDREA SHERMAN, Appellant**

**V.**

**HEALTHSOUTH SPECIALTY HOSPITAL, INC. D/B/A HEALTHSOUTH DALLAS REHAB HOSPITAL, Appellee**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-10-05691-C**

## OPINION

Before Justices Francis, Murphy, and Evans[1]
Opinion by Justice Murphy

Andrea Sherman appeals the trial court's dismissal of her negligence claims against

HealthSouth Specialty Hospital, Inc. d/b/a HealthSouth Dallas Rehab Hospital because of her

failure to serve a chapter 74 expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351

(West 2011). To resolve her issues, we must decide whether HealthSouth's alleged failure to

secure her and her wheelchair in its van transporting Sherman from HealthSouth's clinic to her

---

[1]The Honorable Joseph Morris, Retired Justice, was a member of the Panel at the time this case was submitted. Due to his retirement from this Court on December 31, 2012, he did not participate in deciding the case. He was replaced on the Panel by Justice David Evans. *See* TEX. R. APP. P. 41.1(a).

home is a health care liability claim and, if so, whether the doctrine of res ipsa loquitur eliminates the expert-report requirement. We affirm the trial court's order.

## BACKGROUND

Our factual recitation is based on Sherman's pleadings, in which she alleged she was a passenger in a van being transported back to her home from HealthSouth, a clinic. The driver of the van was a HealthSouth employee. When the driver suddenly applied the brakes, Sherman was thrown from her wheelchair onto the floorboard of the van because she "was not properly secured." Specifically, the driver did not anchor Sherman's wheelchair to the van floor or place a seat belt across her shoulder and strap it across her waist. Sherman landed on her right shoulder and bruised her face and nose. She also sustained injuries to her forehead and neck and suffered mid-back pain.

Sherman filed suit against HealthSouth, alleging the driver was negligent in "not securing [her] before traveling" and HealthSouth was negligent in entrusting the vehicle to the driver in "assuming his ability to operate a vehicle including the securing [of] invalid passengers on the bus." Sherman later amended her petition to invoke the doctrine of res ipsa loquitur. She alleged "the instrumentalities that caused [her] injuries were under the exclusive management and control" of HealthSouth and but for HealthSouth's negligence, she would not have been injured.

HealthSouth generally denied Sherman's allegations and subsequently moved to dismiss her claims, arguing Sherman had alleged health care liability claims under chapter 74 but had not served an expert report within 120 days of filing her original petition. *See id.* § 74.351(a), (b) (requiring court to dismiss claims if expert report not timely served). Sherman responded that her claims were not health care liability claims, but rather claims for general negligence in her

transport from the clinic to her home; as a result, she was not required to serve an expert report. After hearing argument, the trial court granted HealthSouth's motion and dismissed Sherman's claims with prejudice. This interlocutory appeal followed. *See id.* § 51.014(a)(9) (West 2008) (authorizing interlocutory appeal of denial of motion to dismiss filed under subsection 74.351(b)).

## DISCUSSION

Sherman raises two issues on appeal regarding the trial court's dismissal of her claims for failure to serve an expert report. She first contends the trial court erred because her "complaint[s] for injury damages suffered in a motor vehicle accident" are not health care liability claims. She asserts in her second issue that even if her claims are health care liability claims, the trial court erred in granting the motion and dismissing her claims because no expert report is required when the doctrine of res ipsa loquitur is pleaded.

### Issue One: Whether Sherman Alleged Health Care Liability Claims

Our analysis of Sherman's first issue involves determining whether Sherman's allegations are negligence claims or are properly characterized as health care liability claims under chapter 74. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179 (Tex. 2012). The question of whether a cause of action is a health care liability claim is one of law, which we review de novo. *See Saleh v. Hollinger*, 335 S.W.3d 368, 372 (Tex. App.—Dallas 2011, pet. denied); *Lee v. Boothe*, 235 S.W.3d 448, 451 (Tex. App.—Dallas 2007, pet. denied).

Section 74.351 mandates that any person who asserts a health care liability claim against a health care provider must, within 120 days of filing the original petition, provide an expert report relating to each health care provider against whom a claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If the claimant does not serve the required expert report within the

prescribed period (and the parties have not agreed to extend the deadline), on proper motion by the defendant, the trial court shall dismiss the action with prejudice. *Id.* § 74.351(b).

The expert-report requirements of section 74.351 apply to all claims that fall within the following statutory definition of a "health care liability claim":

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13) (West Supp. 2012). To determine whether a claim falls within the definition, we examine the nature of the claim being made. *See Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). We are not bound by the form of the pleading or the plaintiff's characterization of her claim. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) (plurality op.); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). We focus on the essence of the claim and consider the alleged wrongful conduct as well as the duties allegedly breached. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005); *Garland Cmty. Hosp.*, 156 S.W.3d at 543–44 (reviewing court looks at underlying act or omission forming the basis of the complaint).

The Texas Supreme Court instructs that to be a health care liability claim under the definition, the claim must have three component parts: (1) a physician or a health care provider must be the defendant; (2) the suit must relate to the patient's treatment, lack of treatment, or some other departure from accepted standards of medical care, health care, or safety, or professional or administrative services directly related to health care; and (3) the defendant's act or omission or other departure must proximately cause the claimant's injury. *Marks*, 319 S.W.3d at 662. The parties agree for purposes of the issues on appeal that HealthSouth is a "health care

provider" under chapter 74 and its alleged acts or omissions caused Sherman's injuries. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(12)(A)(vii); *Marks*, 319 S.W.3d at 662.[2] Thus, the dispute here concerns the second component—that is, whether the failure to properly secure an invalid passenger in a van before transporting her from the clinic to her home implicates certain accepted standards embodied in the definition of a health care liability claim. *Marks*, 319 S.W.3d at 662. We conclude under the circumstances presented that HealthSouth's alleged conduct implicates the "accepted standards of safety" prong of the definition. *See Williams*, 371 S.W.3d at 186.

A cause of action against a health care provider based upon an alleged departure from accepted standards of safety constitutes a health care liability claim. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Sherman states that her claims concern a "safety breach" by HealthSouth; yet she asserts those claims do not fall within the definition of a health care liability claim because HealthSouth's alleged departure from accepted safety standards when its employee failed to "to strap [her] in the van to return her home" from the clinic was "not related to an act that should have been performed or furnished by [HealthSouth] as a healthcare facility." She maintains HealthSouth provided her the "equivalent of a taxi ride" with "[n]o expectations of medical treatment" or need for medical expertise.

Until its decision in *Texas West Oaks Hospital, LP v. Williams*, the Texas Supreme Court had not defined the "precise boundaries of the safety prong" in the definition of a health care liability claim. *Williams*, 371 S.W.3d at 184; *see also Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 527 n.2 (Tex. 2011) (per curiam). Previous instruction from the court on this issue

---

[2]The van driver, as HealthSouth's employee, acting within the course and scope of his employment or contractual relationship, also qualifies as a "health care provider." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(B)(ii).

was that standards of safety "must be construed in light of the other standards of medical and health care, standards that are directly related to the patient's care and treatment." *Marks*, 319 S.W.3d at 664. In other words, accepted standards of safety are implicated when the unsafe condition or thing causing injury to the patient is an inseparable or integral part of the patient's care or treatment. *See id.*; *Diversicare*, 185 S.W.3d at 854 (suggesting unsafe conditions unrelated to provision of health care may not be properly classified as health care liability claim). The court also has instructed that departures from accepted standards of safety concern those claims directly related to acts that should have been performed or furnished for, to, or on behalf of the patient during the patient's care, treatment, or confinement, such as services provided by a hospital that meet a patient's fundamental needs of cleanliness and safety. *See Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 395 (Tex. 2011); *Ollie*, 342 S.W.3d at 527.

In *Williams*, however, the court expanded the scope of health care liability claims beyond claims for medical and health care. *See Williams*, 371 S.W.3d at 184–86. Specifically, the court concluded that the safety component of a health care liability claim "need not be directly related" to the provision of the patient's care or treatment. *Id.* at 186. In reaching this conclusion, the court construed the word "safety" contained in the definition of a health care liability claim as not being constricted by the phrase "directly related to health care," which was added to the definition as part of the statute's 2003 amendment. *Id.* at 184–85 (disagreeing with proposition that legislature's addition of phrase "directly related to health care" in definition was intended to narrow existing scope of the safety prong); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). It reasoned that if "safety" is construed as requiring a direct connection between safety and health care, the word would become "meaningless surplusage, subsumed into claims based on departures from accepted standards of 'health care.'" *Id.* at 185–86, 192 (citing *Marks*,

- 6 -

319 S.W.3d at 673 (Johnson, J., concurring)). The court also reasoned that "safety" is not defined with reference to a patient; the word has been interpreted to mean "untouched by danger; not exposed to danger; secure from danger, harm or loss." *Id.* at 184, 189, 191–92; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(b) (instructing that undefined words or terms to be construed consistent to common law meaning); *Diversicare*, 185 S.W.3d at 855 (citing 1990 edition of Black's Law Dictionary for commonly understood meaning of safety).

The court's interpretation of the "safety" prong of the definition to exclude any direct connection to health care necessarily applies to the source of the "danger." *See Williams*, 371 S.W.3d at 184, 186; *see also Marks*, 319 S.W.3d at 675 (Jefferson, C.J., concurring and dissenting) (noting that "*Diversicare* holds that premises liability claims are viable against health care providers"); *Diversicare*, 185 S.W.3d at 855, 860–61 (Jefferson, C.J., concurring). The breadth of this holding, which we are required to follow, encompasses the safety claims at issue here. *See, e.g.*, *Ross v. St. Luke's Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613, at *2 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013) (mem. op.) (concluding court was without authority to disregard Texas Supreme Court decision in *Williams* interpreting the safety prong to include a hospital visitor's slip and fall case).

Sherman alleged HealthSouth's employee negligently failed to act with the proper degree of care and caution to secure her in the van before traveling from HealthSouth's clinic to her home. Her negligent entrustment claim relates to that same failure because she claims HealthSouth negligently entrusted its van to that employee when it assumed the employee had the ability to secure invalid passengers before travel. Although not admitted in her pleadings, Sherman does not dispute she had been at the HealthSouth clinic for the purpose of receiving medical care. HealthSouth undertook to transport Sherman from its clinic to her home, and the

alleged failure to secure her properly before traveling occurred as part of her departure from the clinic.

Sherman argues that her "medical dealings" with HealthSouth had been completed and therefore her claims do not meet the definition of a health care liability claim because any association between the transportation provided to her by HealthSouth and the treatment she had received had ended. She maintains this tangential relationship "does not somehow transform a mere van ride into an integral part of health care services." But under *Williams*, a direct connection between the act or omission causing injury and the provision of health care is not necessary for purposes of determining whether a claim is a health care liability claim. *See Williams*, 371 S.W.3d at 186. While HealthSouth was not providing Sherman with medical care or treatment at the time its driver "suddenly had to apply his brakes" and Sherman was not at the HealthSouth clinic at the time of her injuries, HealthSouth still was responsible for Sherman's safety during the transport from the clinic to her home; that is, HealthSouth must ensure she was "untouched by danger" or "secure from danger, harm, or loss." *Id.* at 184.

Finally, Sherman argues that her claims "should be removed from the purview" of the health care liability act because medical expertise is not required to explain how to anchor a wheelchair in a van or place a seat belt across a passenger's shoulder and waist. She also argues that proper application of a seatbelt is within the common knowledge of a layperson and does not require any expertise. The suggestion that expert testimony is not required to prove a claim or support a verdict at trial does not mean the claim is not a health care liability claim. *See Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (per curiam). The expert report requirement of section 74.351 is a threshold requirement for the continuation of the lawsuit, not a requirement

for recovery. *Id.* A claim may still be a health care liability claim even when expert testimony is not required. *Williams*, 371 S.W.3d at 182.

When a plaintiff claims a health care provider was negligent in failing to properly care for her safety, those claims are health care liability claims even if the alleged act or omission is not directly related to the provision of health care. *See id.* at 186. Here, the essence of Sherman's claims is that HealthSouth was negligent for failing to provide for her safety when its employee did not secure her before traveling and for failing to ensure its employee could provide for her safety before travel. Consequently, we conclude Sherman's claims constitute health care liability claims for which an expert report is required. We overrule Sherman's first issue.

### Issue Two: Application of the Doctrine of Res Ipsa Loquitur

Sherman's alternative contention is that even if her claims are health care liability claims, the trial court abused its discretion in requiring an expert report and dismissing her case because her claims are based on the doctrine of res ipsa loquitur. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (trial court's decision on motion to dismiss health care liability claim reviewed for abuse of discretion). Sherman contends the doctrine of res ipsa loquitur eliminates the need for an expert report under section 74.351 because the act of placing a seatbelt across a wheelchair to prevent it from movement is within the common knowledge of a layperson.

Res ipsa loquitur is not a separate cause of action from negligence; it is a rule of evidence by which the jury may infer negligence. *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990); *Broxterman v. Carson*, 309 S.W.3d 154, 158 (Tex. App.—Dallas 2010, pet. denied). It applies to situations in which (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and (2) the instrumentality causing the injury is shown to

have been under the management and control of the defendant. *Haddock*, 793 S.W.2d at 951. Further, it applies only when "the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, requiring no expert testimony." *Id.*

The legislature specifically limited the applicability of the doctrine in health care claims only to those cases in which the doctrine had been applied by Texas appellate courts as of August 29, 1977. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.201. The categories where appellate courts have typically applied the doctrine in health care claims are (1) negligence in the use of mechanical instruments, (2) operating on the wrong portion of the body, and (3) leaving surgical instruments or sponges within the body. *Broxterman*, 309 S.W.3d at 158–59.

We express no opinion on whether the use or non-use of a seatbelt for purposes of strapping a wheelchair in a van would fall within any of the three categories because even if the doctrine applies to Sherman's claims, section 74.351 still requires her to file an expert report. *See Garcia v. Marichalar*, 198 S.W.3d 250, 255–56 (Tex. App.—San Antonio 2006, no pet.). As previously noted, section 74.351's expert report requirement is a procedural threshold "over which a claimant must proceed to continue a lawsuit." *Murphy*, 167 S.W.3d at 838; *Garcia*, 198 S.W.3d at 255. While section 74.201 allows for the limited applicability of res ipsa loquitur in health care liability cases, it is not "an exception to section 74.351's expert report requirement." *Garcia*, 198 S.W.3d at 255 (citing *Hector v. Christus Health Gulf Coast*, 175 S.W.3d 832, 838 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). Nor was the section intended to allow Sherman to simply plead the doctrine as a way to eliminate the procedural requirement of an expert report at the commencement of the litigation. *Hector*, 175 S.W.3d at 839. Consequently, we overrule Sherman's second issue.

**CONCLUSION**

We conclude Sherman's petition alleges health care liability claims under chapter 74 and she therefore was required to serve an expert report. We also conclude the requirement that she file an expert report at the commencement of her suit is a procedural requirement that is not eliminated by pleading the doctrine of res ipsa loquitur. Because Sherman did not file an expert report within 120 days of filing suit, the trial court did not err in granting HealthSouth's motion to dismiss. Accordingly, we affirm the trial court's order.

/Mary Murphy/
MARY MURPHY
JUSTICE

111039F.P05

- 11 -



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

ANDREA SHERMAN, Appellant

No. 05-11-01039-CV       V.

HEALTHSOUTH SPECIALTY
HOSPITAL, INC. D/B/A HEALTHSOUTH
DALLAS REHAB HOSPITAL, Appellee

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. CC-10-05691-C.
Opinion delivered by Justice Murphy.
Justices Francis and Evans participating.

In accordance with this Court's opinion of this date, the trial court's order granting HealthSouth Specialty Hospital, Inc. d/b/a HealthSouth Dallas Rehab Hospital's motion to dismiss is **AFFIRMED**. It is **ORDERED** that appellee HealthSouth Specialty Hospital, Inc. d/b/a HealthSouth Dallas Rehab Hospital recover its costs of this appeal from appellant Andrea Sherman.

Judgment entered this 2nd day of April, 2013.

/Mary Murphy/
MARY MURPHY
JUSTICE