**Reverse and Remand and Opinion Filed May 3, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00827-CV

## CHRISTINE FABER, INDIVIDUALLY AND AS HEIR AT LAW OF CARMELINA "MILLIE" SMITH, DECEASED, Appellant
## V.
## COLLIN CREEK ASSISTED LIVING CENTER, INC. D/B/A DAYSPRING ASSISTED LIVING COMMUNITY, Appellee

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-02547-2015**

## EN BANC OPINION
Before the En Banc Court
Opinion by Justice Molberg

Christine Faber appeals the trial court's April 25, 2018 order dismissing her action for failing to serve an expert report under the Texas Medical Liability Act (TMLA). *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a). On June 30, 2020, a panel of this Court affirmed the trial court's order. Faber filed a timely motion for rehearing en banc, which this Court granted.

Sitting en banc, we withdraw this Court's June 30, 2020 opinion and vacate the judgment of that date. Because we conclude Faber's action is not a healthcare

liability claim (HCLC) under the TMLA for which an expert report is required, we reverse and remand Faber's action to the trial court for further proceedings.

## BACKGROUND

Faber's mother, Millie Smith, was a resident of Dayspring Assisted Living Community, which is owned and operated by appellee Collin Creek Assisted Living Center, Inc. (Collin Creek). On May 25, 2014, Faber went to pick her mother up at Dayspring to take her to a hair styling appointment. Faber parked in Dayspring's parking lot and asked a Dayspring employee to help Millie to the car. Millie, who had become a Dayspring resident only a week earlier, used a rolling walker and sat on it facing backwards as the Dayspring employee pushed her along the public sidewalk outside Dayspring's entrance. Millie's walker got caught in a large crack in the sidewalk, causing her to fall and hit her head on the concrete. She died some six days later.

Faber sued Collin Creek and a second defendant in June 2015, asserting claims on her own behalf and on behalf of Millie's estate. Her original petition, although principally relying on a premises liability theory, also referenced the Dayspring employee's role in her mother's injury and alleged, among other things, that "Dayspring's lack of supervision and/or training" of employees and "failure to enact rules and regulations to ensure the safety of the transport of Dayspring patients, such as Ms. Smith, caused and produced Ms. Smith's injuries." In addition, Faber alleged Dayspring "fail[ed] to render adequate and timely aid." Collin Creek

–2–

answered and, after the deadline for filing medical expert reports expired, moved to dismiss the action because Faber did not file one. *See* TEX. CIV. PRAC. & REM. CODE § 74.351. Faber amended her petition, removing claims of active negligence by Dayspring employees, leaving only allegations based on a defect in Dayspring's premises. She then responded to Collin Creek's motion to dismiss by arguing her premises liability claim did not qualify as an HCLC because Dayspring's duty to maintain its premises is separate and apart from any special duties owed to its residents.

The 219th Judicial District Court granted Collin Creek's motion to dismiss in January 2016. Over the next two years, Faber pursued additional claims against the remaining defendant, which were resolved against Faber by summary judgment in November 2017.

Faber amended her petition twice in 2017. Like her second amended petition, her third amended petition—her last live pleading—asserted claims against Collin Creek based on a premises liability theory focused factually on the instrumentality resulting in Millie's injuries and death, namely "[a] large crack in the concrete, causing her to fall."[1]

---

[1] Faber also raised a premises liability per se case, based on the Americans with Disabilities Act (ADA). Citing 42 U.S.C. § 12182(b)(2)(A)(iv)–(v) and 28 C.F.R. § 35.151, Faber alleged Collin Creek's "sidewalk crack was an architectural barrier that was structural in nature, and removal of the barrier was readily achievable; [Collin Creek's] failure to remedy the structural barrier violated ADA standards." Further, in

In December 2017, after the dismissal by summary judgment of the final claims in the case, the case was transferred to the 366th Judicial District Court. Faber filed motions for new trial on her claims against both defendants, and the court granted both, although it later reinstated its summary judgment order against the other defendant.

In granting a new trial on Faber's claims against Collin Creek, the court concluded, in part, that a question existed as to whether Faber's claims should have been categorized as HCLCs. On April 23, 2018, Collin Creek, in turn, filed both a "Second Motion for Dismissal Pursuant to TEX. CIV. PRAC. & REM. CODE § 74.351," attaching no documents to the motion, and an interlocutory appeal of the order granting Faber a new trial. Two days later, the same day we dismissed that appeal for want of jurisdiction, the trial court reversed course, signing an order granting Collin Creek's second motion to dismiss, without conducting a hearing or allowing time for a response from Faber. This finally disposed of all claims and parties, and Faber timely appealed the trial court's dismissal of Faber's claims against Collin Creek.

---

all her pleadings, Faber alleged a bystander liability claim on her own behalf. Because these claims are likewise predicated on the condition of the sidewalk that caused the harm to Millie, we need not analyze them separately. The parties agree that Faber's live pleading at the time of dismissal presented a premises liability claim and the appeal was briefed accordingly.

## ANALYSIS

The issue before us is whether Faber's negligence action, based on a premises liability theory, is an HCLC. Faber argues it is not and, in any event, Collin Creek's second motion for dismissal was untimely.[2] Because we agree Faber's action is not an HCLC, we need not discuss timeliness.

*Health Care Liability Claims Under the TMLA*

Whether a claim is an HCLC under the TMLA is a legal question we review de novo. *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019).

When conducting our review, we "consider the entire court record, including the pleadings, motions and responses, and relevant evidence properly admitted," as well as "the overall context of the plaintiffs' suit, including the nature of the factual allegations in their pleadings, [the defendant's] contentions, and the motions to dismiss and responses." *Loaisiga v. Cerda*, 379 S.W.3d 248, 258–59 (Tex. 2012). We "look first to the pleadings," *id*. at 259, and consider the underlying nature and gravamen of the plaintiff's claim, not its label, focusing on "whether the gravamen of [the plaintiff's] complaint is a 'claimed departure from accepted standards of

---

[2] Faber raises three issues, the first two of which relate to the root question of whether her action is an HCLC. She argues the trial court erred by dismissing her action because (1) the legislature did not intend to require her to produce a medical doctor's expert report about the causal relationship between Collin Creek's failure to maintain a sidewalk and Millie's injury; (2) Collin Creek is unable to prove a substantive nexus between the safety standards allegedly violated and the provision of healthcare, as required by *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496 (Tex. 2015); and (3) Collin Creek's second motion to dismiss was untimely.

medical care, or health care, or safety or professional or administrative services directly related to health care'". *Weems*, 575 S.W.3d at 363–64 n.21 (quoting TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13), and citing *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016)).

The TMLA defines an HCLC as:

a cause of action[3] against a health care provider[4] or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care,[5] or health care,[6] or safety or professional or administrative services directly related to health care,[7] which

---

[3] The TMLA does not define "cause of action," but the phrase generally "refers to the 'fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief.'" *In re Jorden*, 249 S.W.3d 416, 421 n.19 (Tex. 2008) (orig. proceeding) (quoting *A.H. Belo Corp. v. Blanton*, 129 S.W.2d 619, 621 (Tex. 1939)).

[4] "Health care provider" is defined as "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care," and includes various positions and roles. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(12)(A)–(B) (definition includes a registered nurse, dentist, podiatrist, pharmacist, chiropractor, optometrist, health care institution, or health care collaborative certified under Texas Insurance Code chapter 848, as well as an officer, director, shareholder, member, partner, manager, owner, or affiliate of a health care provider or physician, and an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship).

[5] The TMLA defines "[m]edical care" as "any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(19). The Texas Occupations Code defines "[p]racticing medicine" as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who (A) publicly professes to be a physician or surgeon; or (B) directly or indirectly charges money or other compensation for those services." TEX. OCC. CODE § 151.002(a)(13).

[6] "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10).

[7] "Safety" is not defined in the TMLA but, in connection with an earlier version of the Act, the Texas Supreme Court referred to "safety" according to its common meaning as "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'" *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005) (quoting *Safety*, BLACK'S LAW DICTIONARY 1336 (6th ed. 1990)). "Professional or administrative services" are defined as "those duties or services that a physician or health

proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or in contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Thus, an HCLC has three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death. *Coming Attractions Bridal & Formal*, 595 S.W.3d at 663–64 n.13; *Loaisiga*, 379 S.W.3d at 255 (citing *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010) (plurality op.)); *see also Baylor Univ. Med. Ctr. v. Lawton*, 442 S.W.3d 483, 485 (Tex. App.—Dallas 2013, pet. denied) (same).

In *Loaisiga*, the court held that the TMLA "essentially creates a presumption that a claim is an HCLC if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment or confinement." *Loaisiga*, 379 S.W.3d at 256 (citing *Marks*, 319 S.W.3d at 662). *Loaisiga* then instructed:

---

care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(24). "'Directly related' means an 'uninterrupted, close relationship or link between the things being considered.'" *Coming Attractions Bridal & Formal, Inc. v. Tex. Health Res.*, 595 S.W.3d 659, 665 n.23 (Tex. 2020) (quoting *Weems*, 575 S.W.3d at 365). Finally, the Texas Supreme Court held that the phrase "directly related to health care" modifies the terms immediately before it—professional or administrative services—but not the word safety. *See Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 185 (Tex. 2012).

But the presumption is necessarily rebuttable. In some instances the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting (*i.e.,* the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both.

*Id.*

The supreme court extended this principle to a more analogous context in *Ross v. St. Luke's Episcopal Hospital*, 462 S.W.3d 496, 503 (Tex. 2015), a case in which a visitor sued a hospital on a premises liability theory after she slipped and fell near the lobby exit doors.[8] *Id*. at 498. In *Ross*, the hospital argued, in part, that the plaintiff's claim was an HCLC because any slip and fall event within a hospital is directly related to health care and is necessarily related to the safety of patients. *Id*. at 503. The supreme court disagreed, stating:

[E]ven though the claims in *Loaisiga* were by a patient and the nature of the claims differ from Ross's safety standards-based claim, the principle we explicated there applies here. A safety standards-based claim does not come within the TMLA's provisions just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both.

---

[8] Like *Ross*, and unlike *Loaisiga*, Faber alleges a fall-related premises liability claim. In *Loaisiga*, the plaintiffs alleged assault, claiming a doctor groped their breasts while examining them for sinus and flu symptoms. *Loaisiga*, 379 S.W.3d at 252. After clarifying the standards that applied, *id.* at 252–57, *Loaisiga* held that "a claim against a medical or health care provider for assault is not an HCLC if the record conclusively shows that (1) there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place." *Id*. at 257. The court then remanded the case to the trial court to consider whether expert reports were required for the patients' claims, and if so, whether the court should provide the plaintiffs an extension of time to cure deficiencies in the expert reports they already provided. *Id*. at 263.

–8–

*Id.* (citing *Loaisiga*, 379 S.W.3d at 257). The court stated that "the Legislature must have intended" for the TMLA's provisions to apply "only if the claim has some relationship to the provision of health care other than the location of the occurrence, the status of the defendant, or both" given the legislative intent set out in the TMLA and the context in which "safety" is used in the statute. *Id.* at 504.

*Ross* concluded that for a safety-standards claim to be an HCLC, "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Id.* The court explained the "nexus must be more than a 'but for' relationship. That is, the fact that [plaintiff] would not have been injured but for her falling inside the hospital is not a sufficient relationship between the standards [she] alleges the hospital violated and the hospital's health care activities for the claim to be an HCLC." *Id.*

Acknowledging that "the line between a safety standards-based claim that is not an HCLC and one that is an HCLC may not always be clear," *Ross* provided seven "non-exclusive" factors that "lend themselves to analyzing whether such a claim is substantively related to the defendant's providing of medical or health care and is, therefore, an HCLC":

1.  Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2.  Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the

–9–

provider to protect persons who require special, medical care was implicated;

3.    At the time of the injury was the claimant in the process of seeking or receiving health care;

4.    At the time of the injury was the claimant providing or assisting in providing health care;

5.    Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6.    If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7.    Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id*. at 505.

Under *Ross*, the key inquiry is the nexus between the standards alleged to have been breached and the provision of health care, not the identity or status of the person injured. *Id*. ("The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety."); *Williams*, 371 S.W.3d at 178 ("[O]ur focus in determining whether claims come under the TMLA is not the status of the claimant, but the gravamen of the claim or claims against the health care provider") (citing *Rubio*, 185 S.W.3d at 854).

### *Application*

Here, the parties' primary dispute is the second HCLC element: whether Faber's cause of action is for treatment, lack of treatment, or other claimed departure

–10–

from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care. *See Coming Attractions Bridal & Formal,* 595 S.W.3d at 663–64 n.13 (describing this as second element); *Loaisiga*, 379 S.W.3d at 255 (same); *Lawton*, 442 S.W.3d at 485 (same).

Before addressing this element, we first consider whether Faber's claim raises a rebuttable presumption that it is an HCLC. As previously noted, when a claim against a healthcare provider is "'based on facts implicating the [provider's] conduct during the course of a patient's care, treatment, or confinement,' a rebuttable presumption arises that it is [an HCLC] for purposes of the [TMLA]." *Weems*, 575 S.W.3d at 354 n.16 (quoting *Loaisiga*, 379 S.W.3d at 256).

We conclude no such presumption arises here. Faber's third amended petition—her live pleading pending at the time of the April 25, 2018 order of dismissal—alleges claims based on the condition of Collin Creek's public sidewalk at the time of Millie's fall, not the conduct of the staff member who was with Millie when she fell.[9] Thus, Faber's pleading does not implicate any health care provider's conduct during the course of Millie's care, treatment, or confinement, and no rebuttable presumption arises that Faber's claim is an HCLC. *Cf. id.* at 363

---

[9] When pleadings are amended, the amended pleading supersedes and supplants earlier pleadings. *See Lee v. Na*, 198 S.W.3d 492, 494 (Tex. App.—Dallas 2006, no pet.) (citing Tex. R. Civ. P. 65; *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972) and *Woodruff v. Wright*, 51 S.W.3d 727, 731 (Tex. App.—Texarkana 2001, pet. denied)).

–11–

(presumption raised where Weems claimed nurse falsified medical records during course of his care and treatment as a patient).

Even if we assume the presumption exists, we conclude the record rebuts it because no substantive nexus exists between Faber's claims and safety standards implicating Collin Creek's duties as a healthcare provider. For purposes of our analysis, we assume without deciding that the first and third factors weighed in Collin Creek's favor, although, on this record, doing so represents more than a stretch, considering, among other things, Collin Creek's contractual agreements disclaiming the provision of health care services to Millie.[10] As to the other *Ross* factors, the second, fifth, sixth, and seventh factors weigh against Collin Creek's position as we discuss below, and the fourth factor does not apply.[11]

As to the second, fifth, and sixth factors, the record does not show that Millie was injured in an area where health care patients might be when receiving treatment; the alleged negligence is not based on safety standards arising from the staff member's professional duties; and the injury is alleged to have been caused by a defective sidewalk, an instrumentality not used in the provision of health care. The dissent disagrees based on Millie's functional assessment, but that assessment rated

---

[10] Because of our manner of disposition of this appeal, we need not decide whether Collin Creek's clear contractual disclaimer of the provision of health care services to Millie deprives Collin Creek of the benefits of the TMLA.

[11] The dissent agrees that the fourth factor does not apply.

Millie's mobility as "totally independent" and her transfer ability as "independent."[12] The dissent ignores this evidence and refuses to recognize the gravamen of the claim: negligence through improper sidewalk maintenance, not the action or omission of the person who pushed Millie toward Faber's vehicle to travel to a hair appointment.[13]

Finally, as to the seventh factor, no link exists between Faber's allegations and the safety-related regulations and standards Collin Creek cites. Instead, the

---

[12] According to the record before us, the functional assessment rated Millie in nineteen categories, and within each, points were assessed based on the resident's functionality, with lower numbers reflecting a lower level of dependence and a higher level of independence. While we acknowledge that the record contains some testimony about the assessment as quoted by the dissent, the assessment itself is in the record and reflects the ratings, scores, and language mentioned here, where Millie's mobility was scored as "(0) totally independent" and her transfer ability was scored as "(0) independent."

[13] The transport-related cases cited by the dissent are distinguishable because the alleged negligence in those cases concerned active negligence claims based on failures of medical personnel to secure individuals on or in certain medical equipment, such as on gurneys or in wheelchairs. *See City of Houston v. Houston*, 608 S.W.3d 519, 523 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (alleged failure to secure patient to gurney when transporting from home to ambulance); *Taton v. Taylor*, No. 02-18-00373-CV, 2019 WL 2635568, at *1 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.) (alleged failure to secure patient's wheelchair in van); *Bain v. Capital Senior Living Corp.*, No. 05-14-00255-CV, 2015 WL 3958714, *1, 4 (Tex. App.—Dallas June 30, 2015, pet. denied) (mem. op.) (alleged misuse of wheelchair lap belt when transporting resident in van); *Sherman v. Healthsouth Specialty Hosp., Inc.*, 397 S.W.3d 869, 871 (Tex. App.—Dallas 2013, pet. denied) (alleged failure to secure patient before traveling and failure to ensure its employee could provide for her safety before travel). Here, no such claims have been made. While the dissent correctly notes that plaintiffs may not artfully plead their way around a claim being an HCLC, Faber has not done so, considering the alleged wrongful conduct and the duties allegedly breached. *See Rubio*, 185 S.W.3d at 855 ("[W]e focus on the essence of [the] claim and consider the alleged wrongful conduct and the duties allegedly breached."); *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242–43 (Tex. 1998) (concluding that claimant could proceed with DTPA claim because claim was premised on physician's express misrepresentations, not on alleged breach of medical standards). Additionally, based on the record before us, we disagree with the dissent's view that a jury "will be required to consider more than just whether the crack presented a hazard" and "will necessarily have to consider the [staff member's] actions and the risks associated with the choices [the staff member] made." The case cited by the dissent for those propositions is distinguishable from the facts presented here. *See Se. Tex. Cardiology Assocs. v. Smith*, 593 S.W.3d 743, 748–49 (Tex. App.—Beaumont 2019, no pet.) (court decided that patient's claim was an HCLC where the patient fell over a scale outside his exam room after his exam and where the evidence reflected that the nurses and doctors employed at the facility had decided the scale's location). No such evidence exists in this record regarding the sidewalk's condition.

–13–

standard at issue here is that embodied in the tort-law duty owed by most owners and occupiers of premises, not just premises of health care providers. Put another way, "[t]he obligation of a health care facility to its patients is not the same as the general duty a premises owner owes to invitees." *Rubio*, 185 S.W.3d at 850. Faber's is not a suit that may fairly be said to involve a claimed departure from safety standards that involve a substantial nexus with the provision of healthcare, and it does not implicate Collin Creek's duties as a healthcare provider.

Soon after *Ross*, the Texas Supreme Court decided two other cases involving falls. *See Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429, 431–33 (Tex. 2015) (per curiam) (reversing and remanding court of appeals's reversal of trial court's denial of motion to dismiss in case involving fall in hospital); *Reddic v. E. Tex. Med. Ctr. Reg'l Health Care Sys.*, 474 S.W.3d 672, 673–76 (Tex. 2015) (per curiam) (same). In *Reddic*, the supreme court stated:

> While the hospital lists requirements of various entities with which it must comply . . . the record does not show that the hospital's complying or failing to comply with them had a substantive relationship to the safety standards underlying Reddic's claim. For example, the hospital references state administrative requirements that it must have a multi-disciplinary safety committee and a safety officer, and Joint Commission standards that it must have a written plan for managing safety and security of both patients and other persons who enter the hospital. But Reddic's claim is for the hospital's failing to properly inspect and maintain its floor mats in the lobby, regardless of whether it had a safety committee, a written plan for managing safety, or a safety officer.

*Reddic*, 474 S.W.3d at 675–76 (noting facility failed to identify a particular standard of care that was both "substantively related to the provision of health care and underlies Reddic's claim" and concluding no substantive nexus existed between the provision of health care and the safety standards Reddic claimed the facility violated).

Similarly, in *Galvan*, the court determined that a slip and fall claim was not an HCLC where the gravamen of the claim was failing to remove or warn of water on the floor and where the infection control and safety regulations the facility cited did not have a substantive relationship to the safety standards underlying the claim. *Galvan*, 476 S.W.3d at 432–33.

Both *Reddic* and *Galvan* demonstrate that the record must contain more than a mere list of safety-related regulations and requirements that apply to Collin Creek or its staff in order to determine that a particular claim is an HCLC. Instead, a clear nexus must exist between those regulations and requirements and the underlying negligence being alleged in the claim. Here, we find no link between Faber's allegations and Collin Creek's cited regulations and requirements, making those cites no more useful than jumbled letters in alphabet soup—items that might convey substantive meaning if proper links are made between them, but that are otherwise of little or no utility or substance.

In addition to *Ross*, *Reddic*, and *Galvan*, our earlier decision in *Lawton* is also instructive. In *Lawton*, we held that a nurse's workplace injury claim did not

–15–

constitute an HCLC and thus did not require submission of an expert report under section 74.351 where the condition leading to the nurse's claim (fumes and irritants resulting from the remediation of backed-up sewage in sink and shower drains) did not exist inside patient rooms and where the nurse's claim "related to health care only in that [it] arose on hospital premises." *Lawton*, 442 S.W.3d at 487. In reaching that decision, we noted that requiring an expert report would be futile, as a health care professional's expert report would not shed any light on whether the techniques used in creating the condition violated plumbing standards. *Id*. at 486–87. Because the necessary connection between Lawton's claims and health care did not exist, we affirmed the trial court's denial of the hospital's motion to dismiss. *Id*. at 487. In *Rubio*, the Texas Supreme Court also indicated this could be an important factor in determining whether a claim falls within the TMLA, stating, "The necessity of expert testimony from a medical or health care professional to prove a claim may also be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical or health care services." *Rubio*, 185 S.W.3d at 848 (citing *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 544 (Tex. 2004)).

Like the fumes and irritants in *Lawton*, the only relation between health care and Faber's allegations regarding the defective sidewalk is that the injuries occurred on Collin Creek's property, and no expert report by a health care professional will address whether the appropriate standards were followed in creating or maintaining

the sidewalk, the very premises condition alleged to have caused Faber's mother harm. *Id*.

Here, the standards on which Faber bases her claim do not implicate Collin Creek's duties as a health care provider or its duties to provide for patient safety. The gravamen of Faber's complaint is inadequate sidewalk maintenance outside her mother's assisted living facility—a situation that is even more untethered to health care than a premises liability claim for injuries from the collapse of a rickety staircase inside the facility would be. *See Ross*, 462 S.W.3d at 506–07 (Lehrmann, J., concurring); *Rubio*, 185 S.W.3d at 854 (distinguishing situation in that active negligence case, which court considered "inseparable from healthcare," from one involving "a rickety staircase that gave way under [a patient's] weight").[14] The duty allegedly breached in this case is no different than the duty imposed on businesses generally and does not implicate Collin Creek's duty as a health care provider.[15] *See Reddic*, 474 S.W.3d at 676; *Nexion Health Mgmt., Inc. v. Waddell*, No. 05-20-

---

[14] We disagree with the dissent's conclusion that Faber's claim is inextricably intertwined with Collin Creek's conduct and duties as a healthcare provider. The same types of arguments were made and rejected by the Texas Supreme Court in *Ross* and *Loaisiga*. *See Ross*, 462 S.W.3d at 503 (TMLA does not cover all safety standards-based claims "just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both") (citing *Loaisiga*, 379 S.W.3d at 257)).

[15] One of our sister courts in Houston recently distinguished *Rubio* and affirmed the denial of a motion to dismiss in a premises liability case involving a resident who was raped at an assisted living facility. *See Belmont Vill. Hunters Creek TRS, LLC v. Marshall*, No. 18-00984-CV, 2020 WL 4873563 (Tex. App.— Houston [1st Dist.] Aug. 20, 2020, no pet.). While the alleged misconduct in the two cases is different, *Marshall* is analogous to Faber's case in certain respects, as it involved an assisted living facility that contractually disclaimed any provision of health care to the decedent, just as Collin Creek does here. *Id*. at *4–12 (distinguishing *Rubio*, which involved claims of failure to provide adequate supervision and nursing services, and concluding *Ross* factors did not support dismissal in premises liability claim against assisted living facility relating to resident's rape in the facility).

00406-CV, 2020 WL 7767938, at *2–6 (Tex. App.—Dallas Dec. 30, 2020, no pet.) (mem. op.); *cf. Coming Attractions Bridal & Formal*, 595 S.W.3d at 663–65.[16]

When Faber's claim was dismissed, her petition alleged facts having nothing to do with a health care provider's failure to comply with professional duties and everything to do with the condition of the public sidewalk on the facility's premises. It was a simple, run-of-the-mill premises liability case, where the instrumentality causing injury was broken concrete.

The dissent wrongly suggests that Faber attempted to recast her claim to skirt the strictures of the TMLA. In fact, it is the dissent that attempts to re-characterize Faber's premises claim into one she does not make, namely an active negligence case involving the conduct of the Collin Creek employee who pushed Millie's walker at the time it became snared in the cracked concrete. To reach this view, the dissent is forced to disregard the gravamen of Faber's suit, jettison the holdings of *Williams*, *Rubio*, and other authorities as a consequence, and leave unanswered one revelatory, self-evident fact: Had it not been for the defective condition of the

---

[16] In *Coming Attractions Bridal & Formal*, the Texas Supreme Court found that a substantive nexus existed between the hospital's health care provider duty and the claimant's alleged injury, where the claimant alleged the hospital failed to (1) recognize the danger of the Ebola virus, (2) develop and implement policies and procedures on how to respond to the presence of the Ebola virus in the patient population, (3) ensure that all healthcare providers were trained on how to recognize, appreciate, contain, and treat the Ebola virus in the patient population; (4) train nurses on proper protection from Ebola; (5) ensure that the hospital had appropriate personal protective equipment; (6) notify the appropriate authorities and employ qualified people to manage Ebola patients; (7) instruct and warn its nurses about the dangers of travel and interacting with the public following potential exposure to the Ebola virus; and (8) protect the public from foreseeable harm when it unnecessarily exposed its nurses to the Ebola virus in an unsafe manner and failed to prevent or warn the exposed nurses from interacting with the public. 595 S.W.3d at 661, 663–65. *Coming Attractions* is distinguishable, as Faber makes no similar allegations here.

sidewalk, this lawsuit would not exist. In the legal analysis of the premises liability claim actually presented by Faber, it matters not who was pushing Millie the day of her deadly fall. This underscores yet another fault in the dissent's argument. Presumably, under the dissent's analysis, had Faber pushed her mother that day, the TMLA would not have been implicated. Of course, this makes the case turn merely on the health care employment status of the person assisting Millie and the location of the incident, something we may not do. *See Ross*, 462 S.W.3d at 503–04; *Loaisiga*, 379 S.W.3d at 257. At bottom, however, the dissent fails to establish any substantive nexus between Faber's claims and standards implicating Collin Creek's duties as a healthcare provider.[17]

If we were to affirm the trial court's decision, the statute would once again "become a nebulous barrier to what were once ordinary negligence suits brought by plaintiffs alleging no breach of any professional duty of care." *See Ross*, 462 S.W.3d at 506 (Lehrmann, J., concurring).

Because the substantive nexus required under *Ross* is lacking here, we sustain Faber's second issue and conclude that Faber's action against Collin Creek is not an HCLC and that the trial court erred in granting Collin Creek's second motion to dismiss. In light of our ruling, we do not reach Faber's other two issues because

---

[17] We also disagree with the dissent's implicit assumption that a healthcare employee's mere pushing a facility resident along a public sidewalk automatically transforms the case into an HCLC without a showing that some substantive nexus (other than the location of the incident or the status of the tortfeasor) exists that implicates particular healthcare duties, a breach of which caused the occurrence. Again, Faber presented no active negligence claim in her pleading.

–19–

they are unnecessary to final disposition of the appeal. *See* TEX. R. APP. P. 47.1 (court "must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

## CONCLUSION

We vacate this Court's June 30, 2020 judgment, reverse the trial court's April 25, 2018 order, and remand this cause to the trial court for further proceedings consistent with this opinion.

180827f.p05

/Ken Molberg/
KEN MOLBERG
JUSTICE

Reichek, J., dissenting, joined by Myers, J., Schenck, J., Pedersen, J., and Smith, J.

–20–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTINE FABER,
INDIVIDUALLY AND AS HEIR
AT LAW OF CARMELINA
"MILLIE" SMITH, DECEASED,
Appellant

No. 05-18-00827-CV          V.

COLLIN CREEK ASSISTED
LIVING CENTER, INC. D/B/A
DAYSPRING ASSISTED LIVING
COMMUNITY, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-02547-
2015.
Opinion delivered by Justice
Molberg. Court sitting en banc.

We **WITHDRAW** our opinion and **VACATE** our judgment of June 30, 2020. This is now the judgment of the Court.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's April 25, 2018 order, and **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant CHRISTINE FABER, INDIVIDUALLY AND AS HEIR AT LAW OF CARMELINA "MILLIE" SMITH, DECEASED recover her costs of this appeal from appellee COLLIN CREEK ASSISTED LIVING CENTER, INC. D/B/A/ DAYSPRING ASSISTED LIVING COMMUNITY.

Judgment entered this 3rd day of May, 2021.